1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALERIE HALLIGAN,

               Plaintiff,

     v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.

No. C06-1688MJP

ORDER REVERSING THE
COMMISSIONER'S DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER PROCEEDINGS

14

15

16

17

18

19

20

      This comes before the Court upon Plaintiff Valerie Halligan's petition for review of the Social Security Commissioner's final decision denying Halligan's claim for Disability Insurance Benefits and Supplemental Security Income. Upon review of the record (Dk. Nos. 1, 8, 9, 11, 14, 15) and the documents submitted by the parties, the Court REVERSES the Commissioner's decision and REMANDS to the Commissioner for further proceedings. The Commissioner erred by failing to address the lay testimony of Halligan's daughter when denying Halligan's claim for benefits.

21

**I. Background**

22

23

24

      On February 19, 2002, Halligan filed an application for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq. and 1381 et seq. She alleged a disability beginning April 8, 1999. Her

25

ORDER - 1

1   application was denied initially and upon reconsideration, at which point she requested a hearing

2   before an Administrative Law Judge.

3          At the ALJ hearing on July 8, 2004, Halligan testified that she suffered from lower back pain

4   and psychological problems that prevented her from working.  Halligan's daughter, who lived with

5   Halligan, also testified as to Halligan's poor physical and mental condition.  Finally, the ALJ

6   considered several medical reports which offered varying assessments of Halligan's physical and

7   mental condition.

8          The ALJ denied Halligan's claim for benefits, finding that she retained enough residual

9   functional capacity ("RFC") to perform a number of unskilled jobs.  The Appeals Council declined

10  review.  This Court, upon a stipulation by the parties, reversed and remanded to the ALJ for further

11  consideration of Halligan's impairments and development of the medical record.

12         The same ALJ conducted a second hearing on July 17, 2006.  The ALJ heard live testimony

13  from Halligan, Medical Expert Arthur Lewy, and Vocational Expert Susan Stewart.  In addition, the

14  ALJ reviewed written medical reports from at least ten physicians and therapists who had treated or

15  examined  Halligan over the years.

16         On September 15, 2006, the ALJ issued a written decision denying Halligan's claim for

17  benefits.  The ALJ found that Halligan's impairments were severe, but they did not qualify as a "listed

18  impairment" which would automatically qualify Halligan for benefits.  The ALJ then determined that

19  Halligan had enough RFC to do jobs that entailed minimal contact with co-workers and the public.

20  Because Halligan's past jobs as a bookkeeper and apartment cleaner fit these criteria, Halligan was not

21  considered disabled and thus not eligible for benefits.

22

23

24

25

ORDER - 2

**II. Standard of Review**

The ALJ's 2006 decision denying Halligan disability benefits qualifies as the final decision of the Commissioner.  This Court must uphold the Commissioner's final decision if it is supported by substantial evidence and free from legal error.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999).

**III. Analysis of Halligan's claims of error**

Halligan argues that the ALJ committed three legal errors in denying her claim for benefits.  First, she argues that the ALJ did not properly address the record medical evidence in determining her RFC.  Second, she argues that the ALJ ignored the lay testimony of her daughter in determining her RFC.  Third, she argues that the ALJ's flawed analysis of her RFC meant that the ALJ posed a flawed hypothetical to the Vocational Expert when determining what jobs a person with her RFC could perform.

**A.      The ALJ did not err in addressing the medical evidence.**

In assessing Halligan's RFC, the ALJ concluded that her only significant mental impairment was an inability to interact with other people on the job.  Halligan argues that the ALJ ignored medical evidence that she was also mentally impaired in her ability to sustain a steady work schedule.

It is true that some of the medical evidence suggested Halligan was impaired in this regard.  For instance, Dr. Lewy testified that, while Halligan's mental state was generally benign, there was a 12 month period from 2003 to 2004 where "the effects of accumulated stress and mood may have made sustaining work quite difficult for her."  Treating psychiatrist Beth Sandman submitted a form stating that Halligan would be expected to have difficulty holding a job and was deficient in her ability to complete tasks in a timely manner.  And state evaluating doctors Gregory Roeben and Stephen Goldberg submitted a form stating that Halligan would be moderately limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms."

1    In arguing that the ALJ failed to adequately address these reports, Halligan relies on the rule

2    that "the opinion of an examining doctor . . . can only be rejected for specific and legitimate reasons

3    that are supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830-31 (9th

4    Cir. 1995).  Halligan argues that the ALJ violated this rule by not citing specific reasons for rejecting

5    these medical reports.

6    However, the Lester rule by its very terms applies only to *examining* doctors.  It does not

7    appear that Drs. Lewy, Roeben, and Goldberg ever examined Halligan.  Rather, they reviewed

8    Halligan's existing medical reports and drew their conclusions from those reports.  Thus, there is no

9    requirement that the ALJ cite specific reasons for rejecting these doctors' conclusions.

10    Dr. Sandman *did* examine Halligan, but the ALJ cited specific and legitimate reasons for

11    discounting her conclusions about Halligan's inability to sustain a steady work schedule.  Namely, Dr.

12    Sandman issued these conclusions in a check-the-box form with no written elaboration.  The cursory,

13    check-the-box  nature of Dr. Sandman's form was a valid reason for the ALJ to discount it.  See

14    Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (upholding ALJ's rejection of examining

15    physician's check-the-box form, where that form was unsupported by any written analysis).

16    **B.      The ALJ erred by failing to address the lay testimony of Halligan's daughter.**

17    Halligan's daughter, Jamie Purtteman, testified at the 2004 hearing about Halligan's overall

18    mental fragility.  For instance, Purtteman testified that Halligan routinely suffered panic attacks and

19    had great difficulty remembering simple things.  In his 2004 decision, the ALJ rejected Purtteman's

20    testimony as not credible.  However, after the case was remanded, the ALJ's 2006 decision made no

21    mention of Purtteman's testimony.  This was error.

22    "If an ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are

23    germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); accord Nguyen v.

24    Chater, 100 F.3d 1462, 1467 (9th Cir. 1993) ("lay testimony as to a claimant's symptoms or how an

25    impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded

1   without comment").  By utterly ignoring Purtteman's testimony in his 2006 decision, the ALJ

2   committed an error of law.

3        It makes no difference that the ALJ addressed Purtteman's testimony in his initial 2004

4   decision, for two reasons.  First, when a court remands a final Social Security Administration decision,

5   the Administration policy "is to vacate the final SSA decision which the court remanded, requiring the

6   ALJ to consider all pertinent issues de novo."  4 Soc. Sec. Law & Prac. § 53.58.  Thus, it is irrelevant

7   that the ALJ addressed Purtteman's testimony in his 2004 decision; that decision was vacated and the

8   ALJ was obliged to address the evidentiary record de novo.

9        Second, the ALJ did not provide adequate reasons to reject Purtteman's testimony in the 2004

10  decision itself.  The ALJ rejected Purtteman's testimony on credibility grounds, reasoning that

11  Purtteman's testimony was "dependent upon [Halligan's] subjective complaints" and Halligan herself

12  was not credible.  But lay witnesses who see a claimant on a regular basis are competent to report

13  their *independent* observations, as Purtteman did.  Such observational testimony cannot be

14  disregarded simply because the claimant herself is considered not credible.  See Dodrill, 12 F.3d at

15  918-19.

16       In short, the ALJ erred by ignoring Purtteman's testimony in his 2006 decision.  The fact that

17  he referenced Purrteman's testimony in his 2004 decision does not cure this defect, both because the

18  2004 decision was vacated and because his 2004 reasoning was itself inadequate.

19       Furthermore, the ALJ's error was not harmless.  "[W]here the ALJ's error lies in a failure to

20  properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider

21  the error harmless unless it can confidently conclude that no reasonable ALJ, *when fully*

22  *crediting the testimony*, could have reached a different disability determination."  Stout v.

23  Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006) (emphasis added).  In this

24  case, Purtteman's testimony portrayed Halligan as a confused, fragile woman who needed constant

25

support just to get through the day.  A reasonable ALJ who fully credited this testimony could easily conclude that Halligan was incapable of maintaining a steady work schedule.  Therefore, the error in ignoring Purtteman's testimony was not harmless.

**C.      Because the ALJ committed legal error in evaluating Halligan's limitations and RFC, his hypothetical to the Vocational Expert was also infected by legal error.**

By ignoring Purtteman's testimony when determining Halligan's mental limitations and RFC, the ALJ's RFC determination was infected with legal error.  This means that his hypothetical to the Vocational Expert was also infected with legal error, because the hypothetical was based on the legally erroneous RFC determination.  See Robbins v. Social Sec. Admin, 466 F.3d 880, 886 (9th Cir. 2006).

**D.      This case must be remanded to the Commissioner to re-evaluate Halligan's limitations and RFC, giving due regard to Purtteman's testimony.**

Because the ALJ failed to address Purtteman's lay testimony when analyzing Halligan's limitations and RFC, the Court must remand to the Commissioner for a re-evaluation of Halligan's limitations and RFC, giving due regard to Purtteman's testimony.  If the Commissioner reaches a different conclusion about Halligan's RFC, then naturally the Commissioner must pose a different hypothetical to the Vocational Expert in order to determine what jobs Halligan is capable of doing.

Halligan argues that the Court should remand with instructions that the Commissioner assign a different ALJ.  But there is no warrant for this instruction.  As a general matter, the choice to assign a new ALJ rests in the Commissioner's discretion.  See Travis v. Sullivan, 985 F.2d 919, 924 (7th Cir. 1993).  Courts will only order a new ALJ on remand if there was a strong showing that the initial ALJ was biased or otherwise could not provide a fair hearing.  See, e.g. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir.1996); Sarchet v. Chater, 78 F.3d 305, 309 (7th Cir. 1996); Ventura v. Shalala, 55 F.3d 900, 904 (3rd Cir. 1995).  Halligan has not made this showing.  The single error that the ALJ made on

1    remand does not raise an inference that he is unable to provide Halligan with a fair and impartial

2    hearing.

3                                                    **IV. Conclusion**

4             The Commissioner erred by failing to address Purtteman's lay testimony.  Therefore, the Court

5    REVERSES the Commissioner's final denial of benefits and REMANDS to the Commissioner to

6    reassess Halligan's limitations and RFC, giving due regard to Purtteman's testimony.

7

8

9             The Clerk is directed to send copies of this order to all counsel of record.

10           Dated: July 2, 2007.

11

12                                                        s/ Marsha J. Pechman

13                                                       Marsha J. Pechman

14                                                       United States District Judge

15

16

17

18

19

20

21

22

23

24

25

ORDER - 7